IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KELSI R.,**[1]

                              Plaintiff,                    Civ. No. 6:17-cv-02046-MK

    v.                                                               **OPINION AND ORDER**

**NANCY A. BERRYHILL**, Acting
Commissioner of Social Security

                              Defendant.

---

**KASUBHAI, Judge:**

      Plaintiff Kelsi R. brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on August 13, 2013, alleging disability beginning January 23, 2009. Tr. 20.[2] The claim was denied initially and upon reconsideration. *Id.* Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Katherine Weatherly on July 14, 2016. Tr. 20, 43-61. ALJ Weatherly denied Plaintiff's application in a written decision dated September 15, 2016. Tr. 20-30. Plaintiff sought review from the Appeals Council, which was denied, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of the decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 & 416.920. The initial burden of proof

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 8, provided by the Commissioner.

rests upon the claimant to meet the first four steps. *Id.* If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

In the present case, the ALJ found that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. Tr. 22. At step two, the ALJ found Plaintiff had the following severe impairments: "migraine headaches, idiopathic scoliosis, mild intellectual disability, ADHD by history, anxiety disorder NOS/mild PTSD, and depressive disorder NOS." *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23.

Prior to step four, the ALJ determined that Plaintiff's RFC allowed her to perform light work as defined in 20 C.F.R. 404.1567(b), with the following limitations:

> she needs to avoid all exposure to workplace hazards, such as heights and heavy machinery. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks with no more than occasional contact with the general public.

Tr. 25. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 28. At step five, the ALJ found that, based on Plaintiff's age, education, work experience and RFC, jobs existed in significant numbers in the national economy such that Plaintiff could sustain employment despite

Page 3 – OPINION AND ORDER

her impairments. Tr. 29-30. Specifically, the ALJ found Plaintiff could perform the representative occupations of: hand packager, *Dictionary of Occupational Titles* ("*DOT*") #920.587-018; laundry laborer, *DOT* #361.687-018; and clothes marker, *DOT* #369.687-026. Tr. 30. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. *Id.*

Plaintiff contends that the ALJ erred by: (1) erroneously discounting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinion evidence of Dr. South and Dr. Ward; and (3) failing to adequately account for Plaintiff's social limitations in the RFC.

**I.    Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See*

SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A. Activities of Daily Living

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ relied on the former, finding that Plaintiff's ability to care for her two children indicates that she would be able to sustain work activities on a regular basis. Tr. 26. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ, however, did not identify how any of Plaintiff's activities transferred to gainful work; instead, the ALJ offered a boilerplate statement that Plaintiff's activities indicated she was able to work. The ALJ's rationale is not clear and convincing given the lack of specificity in her finding. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what

testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted). ³

The Commissioner argues that Plaintiff's childcare activities were transferable to a work setting. Def. Br. at 9 (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). In *Morgan*, the Ninth Circuit held that the claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work." *Morgan,* 169 F.3d at 600. The holding in Morgan does not, however, establish that childcare activities in-and-of-themselves meet the threshold for transferable work skills. The holding in *Morgan* could be interpreted to stand for the proposition that the cumulative ability to fix meals, do laundry, perform yardwork, and care for children meets the threshold for transferable work skills, but *Morgan* is even ambiguous on that point. Although the court at first seems to uphold the ALJ based on the activities being transferable to a work setting, the court goes on to explain that "the ALJ, in noting Morgan's daily activities, pointed to the contradictions between Morgan's reported activities and his asserted limitations as an issue of credibility." *Id.* Therefore, it appears that the court was upholding the ALJ's opinion based on contradictions between the claimant's testimony and daily activities rather than transferability to a work setting.

---

³ The ALJ found that Plaintiff's diagnosis of borderline intellectual functioning was inconsistent with the fact that she had received a regular high school diploma and was able to obtain a driver's permit. Tr. 26. However, Plaintiff did not testify that she had borderline intellectual functioning; thus, to the extent the ALJ has identified an inconsistency, it is not clear how that inconsistency would undermine Plaintiff's symptom testimony. Moreover, the record reflects that Plaintiff's full-scale IQ score was 74, putting her in the 4th percentile. Tr. 261. Therefore, her borderline intellectual functioning diagnosis was supported by objective testing. 263-64. Furthermore, the fact that Plaintiff was able to graduate high school and get a driver's license does not invalidate her borderline intellectual functioning diagnosis. Notably, claimants can meet the listing for borderline intellectual functioning, despite having graduated high school and having the ability to drive. *Pedro v. Astrue*, 849 F.Supp.2d 1006, 1008, 1014 (D. Or. 2011). Moreover, Dr. Alvord, whose opinion the ALJ afforded great weight, also diagnosed borderline IQ even though he was aware that Plaintiff graduated high school and had a driver's permit. Tr. 333, 336.

The Commissioner also applies this reasoning, arguing that "Plaintiff's described daily activities contradict her testimony that her impairments are severe enough to prevent her from working." Def. Br. at 9-10. However, the ALJ did not make a finding that Plaintiff's daily activities contradicted her testimony. As such, the Commissioner's argument amounts to a *post hoc* rationalization, which the Court must reject. *Bray v. Commissioner*, 554 F.3d 1219, 1225 (9th Cir. 2009). ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, a general assertion that Plaintiff's activities contradict her testimony is insufficient, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Here, neither the ALJ nor the Commissioner indicated which symptom testimony was contradicted by Plaintiff's activities. Therefore, the Commissioner's argument fails.

Moreover, caring for children without assistance is a demanding task that can undermine a claimant's assertions of disability, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, Plaintiff was not caring for her children without assistance. Plaintiff reported that her mother helped her care for the children by reminding Plaintiff to give them medicine, take them to their doctor's appointments, and give them naps. Tr. 178. Dr. South concluded that with the assistance of her mother, Plaintiff "probably takes decent care of her children." Tr. 251. In 2014, Plaintiff was living with her mother and her mother was helping with the children. Tr. 248, 250. At the time of the hearing, Plaintiff was living with her fiancé and her fiancé helped her with childcare, except during his community college classes. Tr. 26. She continued to need reminders regarding the care of her children. Tr. 55. Furthermore, when Plaintiff has a migraine and during the recovery period,

she is unable to care for her children and either her fiancé or her sister takes care of the kids while she recovers. Tr. 49-50. Therefore, Plaintiff's activities do not constitute a clear and convincing reason for discounting her testimony.

### B. Effective Treatment

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ found that Plaintiff reported focusing better with the use of Ritalin. Tr. 26. Plaintiff testified that Ritalin helps her concentrate and that it works sometimes. Tr. 57. She explained that if she does not take Ritalin then she cannot concentrate, but even when she does take it, her concentration is still somewhat impaired. Tr. 57. Notably, Dr. Alvord concluded that Plaintiff had moderate limitations with regard to concentration despite the fact that Plaintiff had been consistently taking Ritalin. Tr. 333, 339. Accordingly, while Ritalin provided some improvement in Plaintiff's ability to focus, it did not effectively control her difficulties with concentration.

The ALJ also found that Plaintiff's migraine medications were effective when she took them and that her symptoms improved with injections. Tr. 26. Nevertheless, even when Plaintiff took her migraine medications, she still needed to lie down for up to a day in order to recover. Tr. 52. Moreover, Plaintiff only received injections of Morphine, Dilaudid, or Toradol when her migraine medications failed, and the pain became so severe that she needed to go to the hospital. Tr. 52-53. Even with the injections, Plaintiff needed about 24 hours to recover because the injections made her sleep. Tr. 53. Therefore, the record reflects that Plaintiff's migraines were not effectively controlled by medication.

The ALJ additionally found that Plaintiff's migraines were better controlled than Plaintiff alleged in her testimony because Plaintiff did not go to the emergency room between September

2013 and September 2014. Tr. 26. However, Plaintiff never testified that she went to the hospital during that timeframe. While Plaintiff reported that she had gone to the emergency room a lot for her migraines, the fact that there was a one-year period during which she did not go to the hospital is not necessarily inconsistent. Indeed, the record reflects that beginning in September 2014, Plaintiff was sent to the emergency room four times over the course of eight months. Tr. 691, 695, 703, 707. The record reflects that over the years, Plaintiff was hospitalized at least 20 times due to migraines. Tr. 579, 587, 594-95, 599-600, 609, 611, 615-16, 618, 632, 634, 637, 639, 646-47, 687, 691, 695, 703, 707, 712-13.

The ALJ also relied on the fact that Dr. Ward observed that Plaintiff got headaches infrequently. However, Dr. Ward determined that Plaintiff experienced, on average, two migraines per month. Tr. 270. Plaintiff testified that the number of migraines that she experienced in a specific month was highly variable, ranging from six or more per month to one every three months. Tr. 49. Accordingly, Dr. Ward's assessment falls within the range described by Plaintiff and is not inconsistent with Plaintiff's testimony regarding the frequency of her migraines.

### C. Lack of Medical Evidence

While an ALJ may consider the lack of objective evidence, it may not be the sole basis for rejecting a claimant's subjective symptom testimony. *See Rollins*, 261 F.3d at 857. Thus, even if the lack of objective evidence qualified as a clear and convincing reason for discounting Plaintiff's testimony, it would still be insufficient because the ALJ failed to provide any additional clear and convincing reasons. *See Reddick*, 157 F.3d at 722–23 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). Moreover, the purported lack of evidence was not a clear and convincing reason. The ALJ found that the "medical evidence of record in its entirety do[es] not

support [Plaintiff's] allegations of disabling symptoms." Tr. 27. However, the ALJ was required to provide specific, clear and convincing reasons for discounting Plaintiff's testimony. *Smolen*, 80 F.3d at 1281. (citation omitted). Here, the ALJ's reason was vague. Accordingly, the purported lack of medical evidence is not a legally sufficient reason for discounting Plaintiff's testimony.

**II.     Medical Opinion Evidence**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th

Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### A. Susan South, Psy.D.

On January 23, 2014, Dr. South performed an examination of Plaintiff and opined that she suffered from a mild intellectual disability and had a borderline IQ. Tr. 250. Dr. South concluded that Plaintiff's intellectual disability and problems with concentration could interfere with her ability to maintain competitive employment and she would be overwhelmed if she attempted to hold a job while trying to be a single parent to two children. Tr. 251.

The ALJ gave limited weight to Dr. South's opinion. Tr. 27. The ALJ rejected Dr. South's conclusion that Plaintiff would be overwhelmed by working full time while trying to be a single parent, because it was not probative of the ability to work "per the Social Security Administration's disability standard." Tr. 27. The ALJ's reasoning was proper. An ALJ can disregard a medical opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan*, 169 F.3d at 601.

The ALJ also found the doctor's opinion that Plaintiff's intellectual abilities and difficulties with attention could interfere with her ability to sustain gainful employment was inconsistent with Plaintiff's ability to care for her children, obtain a driving permit, and graduate from high school. Tr. 27. As noted above, the ability to graduate high school and get a driver's permit is not inconsistent with impaired intellectual abilities. Moreover, the record reflects that Plaintiff's intellectual impairments presented difficulties regarding her care for her children in that she consistently needed reminders to give them their medication, make sure they brushed their teeth,

take them to appointments, and do the necessary chores around the house, such as laundry and washing the dishes. Tr. 51, 55, 189, 196. Accordingly, the ALJ erred in rejecting Dr. South's conclusion.

Nevertheless, such error was harmless because Dr. South's opinion that Plaintiff's impairments "could most certainly" interfere with her ability to work was equivocal. Tr. 251; *See Griffith v. Colvin*, No. 3:13-cv-00585-HZ, 2014 WL 1303102, at *5 n.3 (D. Or. Mar. 30, 2014) (citing *Morgan,* 169 F.3d at 601) (holding that equivocal conclusions do not represent work related functions that need to be reflected in the RFC); *see also Glosenger v. Comm'r of Soc. Sec. Admin.*, 2014 WL 1513995, at *6 (D. Or. Apr. 16, 2014) (holding that "recommendations" describing the claimant's "ideal work environment" did not qualify as work related functions that had to be included in the RFC). Therefore, to the extent the ALJ erred in rejecting Dr. South's opinion, such error was harmless.

### B.    John Ward, M.D.

Treating physician, Dr. Ward, opined that Plaintiff was experiencing two migraines per month and the migraines rendered her unable to work. Tr. 270-71. The ALJ found Dr. Ward's assessment that Plaintiff had headaches "two times per month, each lasting a few hours" was inconsistent with Plaintiff's report of more frequent headaches lasting all day even with medications.[4] Tr. 28. However, the ALJ mischaracterized Plaintiff's testimony. Plaintiff explained that the number of migraines that she experienced in an average month varied greatly, ranging from six or more per month to one every three months. Tr. 49. Moreover, Plaintiff testified that

---

[4] Notably, the ALJ found that Plaintiff described more frequent migraines and more severe symptoms. Thus, even if the Court upheld the ALJ's finding that Dr. Ward's opinion could be discounted based on the purported inconsistency with Plaintiff's testimony, that would effectively establish that Plaintiff's migraines were *more* severe than Dr. Ward concluded. Moreover, this rationale would be in tension with the ALJ's credibility findings, discussed above, in which the ALJ attempted to discredit Plaintiff because she allegedly described migraine symptoms that were more severe than Dr. Ward had assessed. *Compare* Tr. 26 *with* Tr. 28.

the medication was usually effective in treating the migraine itself, but she would need up to a full day to rest and recover. Tr. 49-50. Therefore, Dr. Ward's assessment was consistent with the range described by Plaintiff.

The ALJ also found that Dr. Ward's opinion merited little weight because "the treatment notes indicate[d] that [Plaintiff's] headaches ha[d] generally improved when she [took] her medications as prescribed and avoid[ed] certain triggers." Tr. 28. However, even though Plaintiff's migraines improved when she took her medications, she still needed to lie down for up to a day in order to recover. Tr. 52. Moreover, it is not clear that Plaintiff was able to successfully avoid triggers. Although Dr. Ward discussed trigger avoidance with Plaintiff, some of the potential migraine triggers included scoliosis, stress, and Plaintiff's menstrual cycle. Tr. 53, 221, 269, 313-14, 380. Therefore, the ALJ failed to provide specific, legitimate reasons for rejecting the opinion of Dr. Ward.

### III. RFC Formulation

The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court must uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff argues that the ALJ failed to adequately account for her social limitations in the RFC. The ALJ limited Plaintiff to no more than occasional contact with the general public but did not include any limitations with regard to contact with co-workers or supervisors. Tr. 25. However, Dr. Alvord opined that Plaintiff would be moderately limited in her ability to "work in coordination with or proximity to others without being distracted by them" and in her ability to "accept instructions and respond appropriately to criticism from supervisors." Tr. 340. "Moderately limited" was defined as a "limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and continuing basis, i.e., 8 hours a day, 5 days a week, or an equivalent, work schedule." Tr. 338. Notably, the ALJ gave Dr. Alvord's opinion great weight, but failed to explain why she did not include any limitations in the RFC with regard to Plaintiff's impaired ability to interact with co-workers and supervisors. Tr. 27.

The Commissioner argues that the ALJ adequately translated Plaintiff's limitations into concrete restrictions in the RFC. Def. Br. at 3 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008)). However, it is unclear how the limitation to occasional contact with the general public accounts for the moderate limitations in Plaintiff's ability to interact with co-workers and supervisors. Indeed, this discrepancy highlights the inconsistency in the ALJ's analysis. Dr. Alvord concluded that Plaintiff would be moderately limited in her ability to interact with the general public, co-workers, and supervisors, but the ALJ only included limitations in the RFC with regard to interacting with the general public. The ALJ failed to explain the discrepancy.

The Commissioner next argues that any error in failing to include limitations regarding Plaintiff's ability to interact with co-workers or supervisors was harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (harmless error exists if "the mistake was . . . irrelevant to the ALJ's ultimate disability conclusion"). The Commissioner cites the *DOT*

definitions of the jobs identified by the ALJ and notes that all three jobs require the lowest level of ability in accepting instructions from supervisors. Def. Br. at 4 (citing *DOT*, (4th ed. 1991)). Nevertheless, Dr. Alvord found that Plaintiff was moderately limited in her ability to accept instructions *and* in her ability to respond appropriately to criticism from supervisors. Tr. 340. The Commissioner fails to address Plaintiff's limitation that "seriously interferes" with her ability to "respond appropriately to criticism from supervisors." Tr. 338, 340.

Pursuant to SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability[.]" Therefore, serious interference in Plaintiff's ability to respond appropriately to supervision could "justify a finding of disability." SSR 85-15.

Moreover, the Commissioner does not address Dr. Alvord's conclusion that Plaintiff has a moderate limitation in her ability to "work in coordination with or proximity to others without being distracted." Tr. 340. Serious interference in the ability to work in coordination with coworkers could also justify a finding of disability. *See* SSR 85-15. Accordingly, the ALJ's mistake was not "irrelevant to the ALJ's ultimate disability conclusion." *Stout*, 454 F.3d at 1055.

## REMAND

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, further proceedings do not serve a useful purpose because the record is fully developed and no outstanding issues are required to be resolved. The ALJ erred in discounting Plaintiff's subjective symptom testimony and in rejecting the medical opinion of treating physician, Dr. Ward.

Dr. Ward opined that Plaintiff experiences, on average, two migraines per month which last for a few hours. Tr. 270. Plaintiff testified that even when the migraine medications are effective and the migraine subsides, it can take an entire day for her to recover. Tr. 52. Dr. Ward

determined that when Plaintiff has a migraine, she is unable to work. Tr. 270-71. Therefore, Plaintiff's testimony and Dr. Ward's opinion demonstrate that Plaintiff would miss two days of work per month. The VE testified that if Plaintiff were to miss two or more days of work per month due to her impairments, that she would not be capable of competitive work. Tr. 59. Thus, when properly credited, the evidence requires a finding of disability.

Where each of the credit as true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled." *Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1021). This case is not one of those "rare instances" and the Court has no serious doubt that Plaintiff is disabled.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and this matter is REMANDED to the ALJ for the calculation and award of benefits.

DATED this 8th day of May 2019.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI<br>
United States Magistrate Judge